**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**DENNIS GRIGSBY,**

    **Plaintiff,**

  **v.**         **Civil Action 2:19-cv-4427**
             **Judge James L. Graham**
             **Magistrate Judge Jolson**

**DAVID JOSEPH BOSLEY,**

    **Defendant.**

## REPORT AND RECOMMENDATION
## AND ORDER

Plaintiff Dennis Grigsby, who is proceeding *pro se*, brings this civil rights action under 42 U.S.C. § 1983, against Defendant David Joseph Bosley. (Doc. 1). This matter is before the Undersigned for consideration of Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. 5) and the initial screen of Plaintiff's complaint, (Doc. 1), under 28 U.S.C. § 1915(e)(2). For the reasons that follow, Plaintiff's request to proceed *in forma pauperis* is **GRANTED**. Furthermore, having performed an initial screen and for the reasons that follow, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B).

**I.**  **MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS***

Upon consideration of Plaintiff's Motion for Leave to Proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) and (2) (Doc. 5), Plaintiff's Motion is **GRANTED**. Plaintiff is required to pay the full amount of the Court's $350 filing fee. 28 U.S.C. § 1915(b)(1). Plaintiff's Motion reveals that he has an insufficient amount to pay the full filing fee.

Pursuant to 28 U.S.C. § 1915(b)(1), the custodian of Plaintiff's inmate trust account at the Chicago Metropolitan Correctional Center is **DIRECTED** to submit to the Clerk of the United

States District Court for the Southern District of Ohio as an initial partial payment, 20% of the greater of either the average monthly deposits to the inmate trust account or the average monthly balance in the inmate trust account, for the six-months immediately preceding the filing of the Complaint. After full payment of the initial, partial filing fee, the custodian shall submit 20% of the inmate's preceding monthly income credited to the account, but only when the amount in the account exceeds $10.00 until the full fee of $350.00 has been paid to the Clerk of this Court. 28 U.S.C. § 1915(b)(2). *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). Checks should be made payable to Clerk, United States District Court and should be sent to:

> Prisoner Accounts Receivable
> 260 U.S. Courthouse
> 85 Marconi Boulevard
> Columbus, Ohio 43215

The prisoner's name and this case number must be included on each check.

Consequently, it is **ORDERED** that Plaintiff be allowed to prosecute his action without prepayment of fees or costs and that judicial officers who render services in this action shall do so as if the costs had been prepaid. The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and the prison cashier's office. The Clerk is further **DIRECTED** to forward a copy of this Order to the Court's financial office in Columbus.

## II.     INITIAL SCREEN

### A.  Relevant Standard

Because Plaintiff is proceeding *in forma pauperis*, the Court must dismiss the complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."

In reviewing a complaint, the Court must construe it in Plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). Although *pro se* complaints are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "basic pleading essentials" are still required. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

**B. Background**

This action stems from an earlier criminal prosecution of Plaintiff by Defendant, an Assistant United States Attorney in the Southern District of Ohio. The Sixth Circuit summarized the relevant history in part:

> Dennis Grigsby, an Ohio pretrial detainee diagnosed with paranoid schizophrenia, appeals from the district court's order entered under *Sell v. United States*, 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003), allowing the government to medicate him involuntarily in an effort to restore his mental competency so that he can be prosecuted on bank robbery charges. …

> The government charged Grigsby with three counts of unarmed bank robbery in violation of 18 U.S.C. § 2113(a). The robberies occurred at different banks in the greater Columbus, Ohio, area between January and March, 2010. The government alleged that Grigsby, a middle-aged person living in homeless shelters, stole approximately $7,482.00 from bank tellers by force, violence or intimidation. The FBI linked Grigsby to the robberies through eyewitness identifications and physical evidence. He was arrested and detained without bond pending trial.

> Grigsby's counsel filed an unopposed motion pursuant to 18 U.S.C. §§ 4241(a) & 4242 requesting mental evaluations to determine if Grigsby is competent to stand trial and whether he was sane at the time of the offenses. The district court granted

the motion, and Grigsby was transferred to the Metropolitan Correctional Center in New York (MCC–New York) for the evaluations.

Two psychologists conducted the examinations and filed reports with the district court. They diagnosed Grigsby with paranoid schizophrenia and determined that he was not competent to stand trial. They offered contradictory findings with regard to whether Grigsby was sane at the time of the bank robberies. The reports stated both that Grigsby's mental disease did not significantly interfere with his appreciation of the wrongfulness of his acts and that there was insufficient information to opine whether mental disease impaired Grigsby's ability to appreciate the wrongfulness of his conduct.

During a short competency hearing, neither party objected to the report findings or to the district court's decision to adopt the findings. The court committed Grigsby to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d)(1) in November 2010 for a period not to exceed four months to determine whether he could be restored to mental competency for the purpose of standing trial.

*United States v. Grigsby*, 712 F.3d 964, 965–66 (6th Cir. 2013).

While in the custody of the Attorney General, subsequent forensic evaluators:

concluded that Grigsby did not understand the seriousness of his legal difficulty and lacked the ability to assist his lawyer during trial as a result of his psychotic symptoms. They also concluded that he was not capable of waiving his constitutional rights rationally or of testifying on his own behalf.

Grigsby refused to take oral medication to treat his schizophrenia. Because he was not gravely disabled and did not present a danger to himself, others, or the safe and secure operation of the facility, he did not meet the criteria for involuntary medication under *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). Consequently, the evaluators requested a judicial order under *Sell* that would authorize them to inject Grigsby involuntarily with a first-generation antipsychotic drug, such as haloperidol (Haldol) or fluphenazine, or a second-generation antipsychotic drug, risperidone, for the purpose of restoring him to competency. These injectable medications can cause serious side effects that require the administration of additional medications.

The evaluators opined that antipsychotic medication was substantially likely to render Grigsby competent to stand trial and substantially unlikely to produce side effects that would interfere with his ability to assist his attorney in preparing a defense. They estimated that medication would have to be administered involuntarily for at least four months to restore Grigsby's competency. They further reported that less intrusive treatments, such as psychotherapy, were not likely to restore Grigsby to competency, and that antipsychotic medication was medically appropriate for Grigsby.

*Id.* at 966–67.

This Court held a *Sell* hearing, "granted the government's motion and ordered involuntary medication." *Id.* at 967–68. The Sixth Circuit reversed the district court's order permitting involuntary medication and remanded with the statement that it "envision[ed] use of the procedures outlined in 18 U.S.C. § 4246 to determine whether civil commitment is appropriate for Grigsby." *Id.* at 976.

On remand, Plaintiff filed a Motion to Dismiss Indictment and Release Dennis M. Grigsby. (*See United States of America v. Dennis M. Grigsby*, 2:10-cr-105, Doc. 62 (S.D. Ohio) (the "Ohio Criminal Case")). This Court granted that Motion on December 19, 2013, three-and-a-half years after the initial indictment. (*Id.*, Doc. 65).

During the pendency of the Ohio Criminal Case, Plaintiff was also being prosecuted for armed robbery by the United States Attorney for the Southern District of Indiana. (*See United States of America v. Dennis M. Grigsby*, 1:10-cr-74 (S.D. Ind.) (the "Indiana Criminal Case")). The Indiana Criminal Case resulted in a plea agreement (*id.*, Doc. 47), and Plaintiff being sentenced to time served, (*id.*, Doc. 52), on November 26, 2014.

Almost six years after this Court granted Plaintiff's request to dismiss the Ohio Criminal Case and release him, Plaintiff filed the instant action. A review of the Complaint suggests that Plaintiff continues to have mental health issues. (*See, e.g.*, Doc. 1, ¶ 21 (stating that he "was coming close to find out why all this crime is really happening because it has happened in history"); (*id.* (citing a show called "Valley of Death" on the "I.D Channel" for proof "that the murders started AFTER they started building all these prisons"); *id.*, ¶ 23 ("[S]ome people have figured out that the prosecutors and police are sociopathic serial killers aiding a phenomenon that kills. The book When Corporations Rule the World was written in 1995, soon after we got school shootings

and a domestic terrorist attack (Oklahoma City Bombing) the same year. 13 years later a banking collapse. The author of the book David C. Korten has an M.B.A and Ph.D. <u>He gave up trying to fix the system</u>."); *id.*, ¶ 24 ("The last banking collapse (hopefully) woke people up. The message is don't use the United States money, form your own [community] or move to one where they have their own currency and you don't have to use a social security number."); *id.*, ¶ 31 ("NPR News reported that FBI agents in certain areas have some brain disease possibly a secret microwave weapon used by an enemy. IT'S HAPPENING NOW!")).

As best the Court can tell, the focus of the Complaint is Defendant's actions in prosecuting Plaintiff in the Ohio Criminal Case. Plaintiff alleges that Defendant "violated [his] 8th amendment right to bail before trial" and subjected him to a competency hearing and violated his right to due process "when he held [Plaintiff] for the next case in Indianapolis" and did not allow [Plaintiff] to plead "to the minimum time." (*Id.*, ¶¶ 38, 44–48). Further, he alleges that he was subject to false arrest because Defendant had no probable cause to arrest him; for the same reason, Plaintiff contends, he also has a claim of malicious prosecution against Defendant. (*Id.*, ¶¶ 52–53). Finally, Plaintiff alleges that Defendant subjected him to intentional infliction of emotional distress and past and future emotional distress as a result of Defendant conspiring against him. (*Id.*, ¶¶ 54–63). In view of the foregoing, Plaintiff seeks significant compensatory and punitive damages. (*Id.*, ¶¶ 64–72).

### C. Discussion

Plaintiff's claims require the Undersigned to consider whether Defendant is entitled to prosecutorial immunity. Prosecutors are "absolutely immune from liability" for their actions that are "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (citation and quotations omitted). "[A]bsolute immunity,"

however, "may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." *Id.* at 342 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 433 n.33 (1976)). "[W]hen determining whether a government official's actions fit within the category of actions traditionally entitled to absolute immunity, … courts must look to the nature of the function performed, not the identity of the actor who performed it." *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010) (citations omitted).

The Sixth Circuit has helpfully provided "some guidance to help determine where that line should be drawn." *Id.*

> For example, conduct by a prosecutor that is nonetheless investigative or administrative in function includes: giving legal advice to police; making out-of-court statements at a press conference; making statements in an affidavit supporting an application for an arrest warrant; and authorizing warrantless wiretaps in the interest of national security. On the other hand, prosecutors have absolute immunity from suits for malicious prosecution and for defamation, and ... this immunity extends to the knowing use of false testimony before the grand jury and at trial. Likewise, they have absolute immunity for the following actions: appearances at probable cause and grand jury hearings; evaluation of evidence and presentation of that evidence at pre-trial and trial proceedings; and preparation of witnesses for trial.

*Id.* (internal citations, quotations, and alterations omitted).

Plaintiff's claims require a straightforward application of these principles. He alleges that Defendant subjected him to false arrest and malicious prosecution and violated his Eighth and Fourteenth Amendment rights by arguing for his detention pending trial, subjecting him to a competency hearing, and refusing to allow him to plead to the minimum amount of time. (*See generally* Doc. 1). But all of Defendant's alleged actions are "intimately associated with the judicial phase of the criminal process," *Van de Kamp*, 555 U.S. at 341, and Defendant is entitled to absolute immunity as a result, *see Buchanan v. Metz*, 647 F. App'x 659, 668 (6th Cir. 2016) (affirming dismissal of false arrest claim against prosecutor based on absolute immunity); *Howell*

*v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012) (citations omitted) ("A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity."); *id.* at 354 (citations omitted) ("[A] prosecutor may bring and litigate charges with absolute immunity, even if the prosecutor acts with malice and without probable cause."); *Ghaith v. Rauschenberger*, 493 F. App'x 731, 740 n.4 (6th Cir. 2012) (concluding that prosecutors' actions at bond hearing "would be shielded by absolute prosecutorial immunity … since they were acting as advocates"); *Cady v. Arenac Cty.*, 574 F.3d 334, 341 (6th Cir. 2009) (citation and quotations omitted) (holding that "[c]onduct associated with plea bargains has long been held by this court to be so intimately associated with the prosecutor's role as an advocate of the State in the judicial process as to warrant absolute immunity"); *Boettger v. Fairchild*, No. 17-4048-DDC-KGS, 2017 WL 6371862, at *4 (D. Kan. Dec. 13, 2017) ("At a competency hearing, a prosecutor is advocating on behalf of the State.  Mr. Melton was acting as an advocate, not an administrator or investigator.  He was performing a function that it is intimately associated with the judicial phase of the criminal process.  Absolute immunity protects Mr. Melton from suit for his actions at the competency hearing."); *Gooding v. Gonzales*, No. 3:10CV33, 2011 WL 841261, at *5 (W.D. Va. Mar. 7, 2011) (collecting cases) (holding that federal prosecutors' actions related to a detention hearing, plea negotiations, and sentencing proceedings were "all part of the criminal process arising after probable cause exists" and, therefore, entitled to absolute immunity).  Plaintiff's Complaint, therefore, fails to state a claim upon which relief may be granted and should be dismissed accordingly.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to Proceed *in forma pauperis* is **GRANTED** (Doc. 5); however, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's Complaint, (Doc. 1), in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B).

The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and the prison cashier's office. The Clerk is further **DIRECTED** to forward a copy of this Order to the Court's financial office in Columbus.

## <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date:   January 29, 2020                    /s/ Kimberly A. Jolson
                                               KIMBERLY A. JOLSON
                                               UNITED STATES MAGISTRATE JUDGE